IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **AMERICAN CONTRACTORS INDEMNITY COMPANY,** | **Case No. 1:23-CV-01146** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **ENVIROCOM CONSTRUCTION, INC., AND SUSAN L. GILES** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Currently pending before this Court is Plaintiff American Contractors Indemnity Company's ("Plaintiff") Motion for Default Judgment Against Defendant Envirocom Construction, Inc. filed on January 26, 2024 ("Plaintiff's Motion"). (Doc. No. 18.) Defendant Envirocom Construction, Inc. ("Envirocom") did not file a response or opposition to Plaintiff's Motion. Therefore, Plaintiff's Motion is ripe for a decision.

## I. Background and Procedural History

On June 7, 2023, Plaintiff filed a Complaint alleging in relevant part that on October 9, 2018, Envirocom (as "Principal") and Defendant Susan L. Giles ("Giles") (as an "Indemnitor") executed an Indemnity Agreement in its favor as a condition for Plaintiff's execution of certain surety bonds on behalf of Envirocom. (Doc. No. 1, PageID # 3, at ¶ 7.) Plaintiff attached to its Complaint, as Exhibit 1, what it alleged is a true and accurate copy of the Indemnity Agreement and quoted relevant provisions thereof. (*Id.*, PageID #s 3-6, Doc. No. 1-1.)

Plaintiff alleged that in reliance upon the covenants and conditions in the Indemnity Agreement, it issued surety bonds on behalf of Envirocom, including Bid Guaranty and Contract

Bond No. 1001133042 (the "Bond"), pertaining to a contract between Envirocom and the County of Cuyahoga (the "Obligee") to undertake a project known as the Cuyahoga County Medical Examiner Building Improvement (the "Project").  (Doc. No. 1, PageID # 6, at ¶ 15.)  Plaintiff attached as Exhibit 2 to its Complaint, a copy of the Bond.  (*Id.*, Doc. No. 1-2.)

Plaintiff alleged that London Road Electric ("London"), a subcontractor to Envirocom on the Project, asserted a claim against the Bond as a result of Envirocom's inability or failure to pay it for labor and/or materials furnished on the Project; and that pursuant to and subject to its rights and obligations under the Bond and Indemnity Agreement, Plaintiff settled, paid, and resolved London's demand on the bond for the sum of $43,195.00.  (*Id.*, PageID # 6, at ¶¶ 16, 17.)  According to Plaintiff, it issued payment to London in that amount on the belief that it was liable for the amounts disbursed and/or that it was necessary or expedient to make such payment to London.  (*Id.*, at ¶ 18.)  Plaintiff alleged that its payment to London under the Bond in the amount of $43,195.00 constitutes an "Event of Default" as defined in the Indemnity Agreement for which Envirocom and Giles are jointly and severally liable.  (*Id.*, at ¶ 19.)

Plaintiff also alleged that Imperial Heating and Cooling, Inc. ("Imperial"), a subcontractor to Envirocom on the Project, asserted a claim against the Bond as a result of Envirocom's inability to pay it for labor and/or materials furnished on the Project; and that pursuant and subject to its rights and obligations under the Bond and Indemnity Agreement, Plaintiff settled, paid, and resolved Imperial's demand on the Bond for the sum of $86,363.65.  (*Id.*, PageID # 7, ¶¶ 20, 21.)  According to Plaintiff, it issued payment to Imperial in that amount on the belief that it was liable for the amounts disbursed and/or that it was necessary or expedient to make such payment to Imperial.  (*Id.*, at ¶ 22.) Plaintiff alleged that its payment to Imperial under the Bond in the amount of $86,363.65 constitutes

an "Event of Default" as defined by the Indemnity Agreement for which Envirocom and Giles are jointly and severally obligated to indemnify and reimburse Plaintiff.  (*Id.*, at ¶ 23.)

Plaintiff alleges that as a result of issuing the Bond on behalf of Envirocom, it has incurred losses in the amount of $129,558.65 with additional interest, costs, expenses, and attorneys' fees which continue to accrue, and that pursuant to the Indemnity Agreement, Envirocom and Giles are jointly and severally obligated to exonerate, indemnify, reimburse, and save and hold harmless Plaintiff from those losses, interest, costs, expenses, and attorneys' fees, in an amount exceeding $129,558.65.  (*Id.*, at ¶¶ 24, 25.)  According to Plaintiff, by letters dated November 10, 2022 and April 12, 2023, true and accurate copies of which are attached to its Complaint as Exhibits 3 and 4, respectively, it demanded that Envirocom and Giles indemnify/reimburse its loss in the amount of $129,558.65, pursuant to the Indemnity Agreement, relative to Plaintiff's settlement, payment, and resolution of London's and Imperial's claims against the Bond; but Envirocom and Giles failed to respond or acknowledge their joint and several obligations to Plaintiff and have failed and refused to exonerate, indemnify, reimburse, and hold harmless Plaintiff as required by the Indemnity Agreement.  (*Id.*, PageID #s 7-8, at ¶¶ 26-28.)

Plaintiff's Complaint includes two Causes of Action: Count 1 – Breach of the Indemnity Agreement against both Envirocom and Giles; and Count II – Equitable Indemnity, Reimbursement and Exoneration Against Envirocom only.  (*Id.*, PageID #s 8-10, at ¶¶ 29-37.)  In relevant part, as set forth in the Wherefore Clause of Plaintiff's Complaint, Plaintiff seeks judgment against Envirocom and Giles, jointly and severally, in an amount of no less than $129,558.65, plus interest at the contractually agreed rate of 10% per annum, and the additional losses of costs and fees, including all attorneys' fees, that continue to accrue in a final amount to be proven at trial.  (*Id.*, PageID # 10.)

On July 24, 2023, Giles, individually and "as the person designated by law to accept service of process on behalf of Envirocom," was personally served with a copy of the summons and Plaintiff filed the Return of Service associated with each defendant.  (Doc. Nos. 5 and 6.)  After obtaining an extension of time within which to respond to Plaintiff's Complaint, on September 1, 2023, Giles filed an Answer to the Complaint.  (Doc. No. 8.)  After the Court issued a Show Cause Order on September 19, 2023, ordering Plaintiff, within 14 days of the date of the Order, to submit an application for entry of default and an affidavit in support thereof or show cause why Envirocom should not be dismissed for want of prosecution, Plaintiff filed a combined response thereto, and motion to extend the deadline for service of process on Envirocom.  (Doc. No. 10.)  Plaintiff explained that after it filed the returns of service with the Court, its counsel discovered that Giles is not an officer, director, or agent of Envirocom and was not authorized to accept service of process on its behalf.  (*Id.*)  In a non-document order entered on September 22, 2023, the Court granted Plaintiff's motion for extension, and on November 16, 2023, Plaintiff filed a return of service of process on Envirocom, indicating that the summons was served on John W. Giles, who is designated by law to accept services of process on behalf of Envirocom.  (Doc. No. 13.)

The docket reflects that Envirocom did not answer or otherwise respond to Plaintiff's Complaint, and on December 29, 2023, Plaintiff filed a Request for Entry of Default against Envirocom, which was entered on January 2, 2024.  (Doc. Nos. 14, 16.)  Meanwhile, on December 29, 2023, Plaintiff filed a Notice of Filing Bankruptcy of Giles.  (Doc. No. 15.)  On January 2, 2024, the Court issued an Order staying further proceedings against Giles subject to reopening upon written motion by Plaintiff, which warrants relief from the automatic stay imposed by 11 U.S.C. § 362 or by

injunction imposed under 11 U.S.C. § 524 or which notifies the Court that the bankruptcy case is closed, dismissed, or discharged. (Doc. No. 17.)

On January 26, 2024, Plaintiff filed its Motion for Default Judgment against Envirocom only, seeking a damage award in the amount of $153,075.52, including contractual interest and attorneys' fees, relative to Count 1 of its Complaint, pursuant to Fed. R. Civ. P. 55(b)(2). (Doc. No. 18.) Plaintiff submits that a default judgment in its favor in relation to Count I of its Complaint, sounding in breach of the Indemnity Agreement, will moot Count II, which "sound[ed] in equitable indemnity, reimbursement, and exoneration," and "end this action." (Doc. No. 18, PageID # 120.) Envirocom did not respond to Plaintiff's Motion. Accordingly, Plaintiff's Motion is ripe for a decision.

## II.     Standard of Review

Following the clerk's entry of default pursuant to Rule 55(a) and the party's motion for default judgment under Rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *P&G Health & Longterm Disability Plan v. Molinary*, No. 1:18-cv-283, 2019 WL 358936, at *1 (S.D. Ohio Jan. 29, 2019) (quoting *Morisaki v. Davenport, Allen & Malone, Inc.*, No. 2:09-cv-298, 2010 WL 3341566, at *1 (E.D. Cal. Aug. 23, 2010)). Specifically, this Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, 2010 WL 2572713, at *4 (E.D. Mich. June 23, 2010). To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Mill's Pride, L.P. v. W.D. Miller Enterprises, LLC*, No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010). Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing" regarding damages. *Vesligaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009). An

evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it. *HICA Educ. Loan Corp. v. Jones*, No. 4:12 CV 962, 2012 WL 3579690, at *1 (N.D. Ohio Aug. 16, 2012). The Court may rely on affidavits submitted on the issue of damages. *Schilling v. Interim Healthcare of Upper Ohio Valley, Inc.*, No. CIV A 206-CV-487, 2007 WL 152130, at *2 (S.D. Ohio Jan. 16, 2007); *see also P&G Health & Longterm Disability Plan*, 2019 WL 358936, at *1.

**III.     Analysis**

Upon review of the record in this case, the Court finds that default judgment is warranted. Envirocom's failure to respond to the Complaint, entry of default, or Motion for Default Judgment has made it clear that Envirocom has no intention of defending this action. The Court accepts the allegations set forth in the Complaint as true and, therefore, finds that Envirocom is liable to Plaintiff for breach of the Indemnity Agreement.

The Declaration of Plaintiff's Senior Bond Claims Litigation Representative Todd Leyva ("the Leyva Declaration") demonstrates that Envirocom executed the Indemnity Agreement, a true and accurate copy of which is attached to the Complaint as Exhibit 1, as a condition of Plaintiff's issuance of surety bonds on behalf of Envirocom. (Doc. No. 18-2, at ¶ 4.) The relevant provisions of that Indemnity Agreement, correctly quoted in Plaintiff's Motion, demonstrate that: 1.) Envirocom is required to indemnify Plaintiff for all losses, damages, and expenses (including attorneys' fees) incurred by reason of issuance of any surety bond on behalf of Envirocom and/or enforcing the Indemnity Agreement (Doc. 1-1, PageID # 13, Section III, titled "INDEMNITY, EXONERATION AND HOLD HARMLESS"); 2.) Plaintiff was granted the right in its sole and absolute discretion to settle bond claims (*Id.*, PageID # 14, Section VIII, titled "SETTLEMENTS"); and 3.) an itemized,

6

sworn statement of Plaintiff's payments shall be conclusive and binding evidence of the fact and

amount of Envirocom's liability absent actual fraud on Plaintiff's part (*Id.*, PageID # 15, Section IX,

titled "REIMBURSEMENT").

In Ohio,[1] "[i]ndemnity arises from contract, either express or implied, and is the right of a

person, who has been compelled to pay what another should have paid, to require complete

reimbursement." *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987).  "In general, to

indemnify is to make whole and has been defined to mean to save harmless by giving security for the

reimbursement of a person in case of anticipated loss . . . ."  *Id.*  "Courts interpret indemnity

agreements the same way they interpret contracts."  *Papatheodorou v. Clark*, 781 F. Supp. 2d 582,

586 (N.D. Ohio 2011).  As the Ohio Supreme Court explained:

> The nature of an indemnity relationship is determined by the intent of the parties as
> expressed by the language used.  All words used must be taken in their ordinary and
> popular sense, [] and when a writing is worded in clear and precise terms; when its
> meaning is evident, and tends to no absurd conclusion, there can be no reason for
> refusing to admit the meaning which it naturally presents.

*Worth*, 513 N.E.2d at 256 (internal citations, quotation marks, and original alterations omitted); *see*

*also Glaspell v. Ohio Edison Co.*, 505 N.E.2d 264, 267 (Ohio 1987) (noting that indemnity agreement

should be construed such as "all the words used [must] be taken in their ordinary and popular sense").

A breach of contract occurs when: "(i) a party demonstrates the existence of a binding contract

or agreement; (ii) the nonbreaching party performed its contractual obligations; (iii) the allegedly

breaching party failed to fulfill its contractual obligations without legal excuse; and (iv) the

nonbreaching party suffered damages as a result of the breach." *Phila. Indem. Ins. Co. v. Fox*, 2019

---

[1]  In a diversity case, federal courts apply the substantive law of the forum state.  *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013).  Here, Plaintiff cites Ohio law in support of its Motion, indicating to this Court that it is correctly requesting that the Court interpret the Indemnity Agreement under Ohio law.  (Doc. No. 18-1, PageID # 126.)

WL 2437442, at *2 (S.D. Ohio June 10, 2019) (citing *Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio*, 880 N.E.2d 926, 934 (Ohio App. 4th Dist. 2007)).

"[T]he interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court."  *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008); *see Ohio Hist. Soc'y v. Gen. Maint. & Eng'g Co.*, 583 N.E.2d 340, 345 (Ohio App. 10th Dist. 1989).  It is the role of the court to discern the intent of the parties, which is "presumed to reside in the language they choose to use in their agreement."  *Savedoff,* 524 F.3d at 763 (quoting *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996)); *see U.S. Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201, 1208 (Ohio App. 2d Dist. 1998).  "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument."  *Alexander v. Buckeye Pipe Line Co*, 374 N.E.2d 146, 150 (Ohio 1978).  "The [c]ourt must look to the plain language of the contract, and only go beyond the plain language of the agreement to determine the rights and obligations of the parties if it is ambiguous."  *Airlink Communs., Inc. v. Owl Wireless, LLC*, 2011 WL 4376123, at *2 (N.D. Ohio Sept. 20, 2011) (internal citations omitted).

"Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations."  *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio App. 10th Dist. 2003) (citation omitted); *see also Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008); *Sec'y of USAF v. Commemorative Air Force*, 585 F.3d 895, 900 (6th Cir. 2009).  "[C]ourts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, i.e., apparent on the face of the

contract." *Covington*, 784 N.E.2d at 190.  In determining whether contractual language is ambiguous, the contract "must be construed as a whole," *Tri-State Grp., Inc. v. Ohio Edison Co.*, 782 N.E.2d 1240, 1246 (Ohio App. 7th Dist. 2002) (quoting *Equitable Life Ins. Co. of Iowa v. Gerwick*, 197 N.E. 923, 926 (Ohio App. 5th Dist. 1934)), so as "to give reasonable effect to every provision in the agreement," *Stone v. Nat'l City Bank*, 665 N.E.2d 746, 752 (Ohio App. 8th Dist. 1995).  "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *JBlanco Enters. v. Soprema Roofing & Waterproofing, Inc.*, 2016 WL 6600423, at *4 (N.D. Ohio Nov. 8, 2016) (citation omitted).

Having reviewed the Indemnity Agreement, the Court finds that the relevant provisions cited and relied upon by Plaintiff in support of its Motion, are clear and unambiguous and therefore, enforceable.  Moreover, Envirocom has not filed a response to Plaintiff's Complaint or Plaintiff's Motion, and therefore, it has not asserted, much less established or demonstrated a legal excuse for its failure to indemnify Plaintiff, e.g., that Plaintiff failed to reasonably investigate the claims of London and Imperial, or, in the verbiage of the Indemnity Agreement, did not have **a good faith belief** that: "(1) any Principal or Indemnitors is or has been in default under this Agreement; (2) the Surety was or might be liable for a claim asserted against a Bond, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient to protect any of the Surety's rights or interests or to avoid or lessen the Surety's actual or alleged liability."  (Emphasis added.)  (Doc. No. 1-1, PageID # 13, Section III.)  *See Cincinnati Insurance Company v. Savarino Const. Corp.*, 2011 WL 1068022 at *10 (S.D. Ohio Mar. 21, 2016) (where in the context of a surety's claim to enforce an indemnity agreement against the principal, the court, citing non-Ohio cases where courts found that such a claim would not be enforced if the surety failed to exercise reasonableness in

9

investigating and settling the claims against the principal, found that the surety was bound by the implied covenant of good faith owed by the surety to the principal, requiring the court to consider the evidence adduced in the summary judgment motions of the parties regarding the reasonableness of the surety's actions, or inactions.)

The Court finds that Envirocom has breached the Indemnity Agreement, and that Plaintiff has incurred and continues to incur losses, damages, and expenses, including attorneys' fees, by reason of having issued the Bond and/or enforcing the Indemnity Agreement in this action. (Doc. No. 18-2, at ¶ 11.) Further, the Court finds that pursuant to its settlement rights under the Indemnity Agreement, Plaintiff made settlement payments totaling $129,558.65 to resolve the claims of London and Imperial against the Bond. (*Id.*, at ¶ 10.) The Court finds that Plaintiff has also incurred and continues to incur attorneys' fees in excess of $10,561.00 and that Plaintiff is owed interest as of January 18, 2024, at 10 percent per annum, in the amount of 12,955.87. (*Id.*, at ¶¶ 12-13, 15.) And, without any response filed by Envirocom to Plaintiff's Complaint asserting otherwise, or response to Plaintiff's Motion, asserting and/or demonstrating otherwise, the Court concludes that all of Plaintiff's losses, damages, and expenses (including attorneys' fees) were incurred in the honest or good faith belief that liability, necessity, and/or expedience existed for the payments. (*Id.*, at ¶ 16.) Finally, since Envirocom has not answered the Complaint or responded to Plaintiff's Motion so as to assert or allege "actual fraud" as that term is used in paragraph IX of the Indemnity Agreement, pursuant to that provision of the Indemnity Agreement, the Leyva Declaration constitutes conclusive evidence of the fact and amount of Envirocom's liability to Plaintiff in the amount of $153,075.52. (Doc. No. 1-1, PageID # 15.)

## IV.     Conclusion

Accordingly, the Court GRANTS Plaintiff's Motion, and awards Plaintiff damages in the amount of $153,075.52 pursuant to Fed. R. Civ. P. 55(b)(2).

**IT IS SO ORDERED.**


      _s/Pamela A. Barker_

PAMELA A. BARKER

Date:  February 27, 2024        U. S. DISTRICT JUDGE